UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re:  A & A Communications Development, Inc. (Debtor)

**MICHAEL MAURICE STAGGS, III,**
**MICHAEL STAGGS COMMUNICATIONS**
**DEVELOPMENT, INC.,**

      **Appellants,**

-vs-                 Case No.  6:07-cv-1731-Orl-19

**ROBERT E. THOMAS,**

      **Appellee.**

_____

# ORDER

This case comes before the Court on the following:

1. Initial Brief of Appellants (Doc. No. 17, filed Nov. 15, 2007);

2. Reply of Appellee to Appellants' Initial Brief (Doc. No. 22, filed Dec. 31, 2007);

3. Motion to Dismiss Appeal (Doc. No. 23, filed Dec. 31, 2007);

4. Response of Appellants in Opposition to Motion to Dismiss Appeal (Doc. No. 24, filed Jan. 9, 2008); and

5. Reply Brief of Appellant to Appellee's Reply to Appellants' Initial Brief (Doc. No. 25 Jan. 10, 2008).

## Background

Appellants Michael Maurice Staggs III and Michael Staggs Communications Development ("MSCD") appeal from an order issued by the U.S. Bankruptcy Court for the Middle District of Florida appointing GrayRobinson, P.A., as special counsel for the trustee, Robert Thomas.  Thomas

has moved to dismiss the appeal on jurisdictional grounds, arguing that Staggs and MSCD lack standing to challenge the Bankruptcy Court's appointment of special counsel.[1]  (Doc. Nos. 18, 22, 23.)

This case involves at least seven parties and three legal proceedings.  A&A Communications Development, Inc. ("A&A") is the debtor in the underlying bankruptcy case.  A&A was formed in 2001 by Troy Atkins to perform construction and upgrades to cellular tower sites.[2]  (Doc. No. 6-7 at 3.)  Around the same period, Westower Communications, Inc.[3] ("Westower") hired Staggs to oversee some of its projects, giving Staggs authority to hire subcontractors.  (*Id.* at 5-6.)  In that capacity, Staggs hired A&A as a subcontractor for various Westower projects.  (*Id.*)  A&A's primary source of income came from its contracts with Westower. (*Id.*)

Westower later terminated Staggs and learned that it paid A&A over $500,000 for work which had never been done.  (*Id.* at 6.)  Before this discovery occurred, A&A transferred its proceeds from the Westower projects to other two entities: Castlebuilders, a sole proprietorship owned by Staggs, and MSCD, a corporation co-owned by Staggs and Atkins.  (*Id.* at 6-7.)  In turn, Castlebuilders and MSCD transferred the proceeds to two other entities formed or incorporated by Staggs: Stagg Brother's Racing, LLC and Secure Communications, Inc.  (*Id.* at 8-9.)  All of the transfers were made without consideration.  (*Id.* at 6-8.)

---

[1] In addition, Thomas argues that the appeal is interlocutory and improper.  (Doc. No. 22 at 9; Doc. No. 23 at 11-14.)  Thomas also filed a brief contesting the merits of the appeal.  (Doc. No. 22.)

[2] The facts regarding the alleged fraudulent transfers are taken from the adversary complaint in the underlying bankruptcy proceeding.  (Doc. No. 6-7.)  Appellants have not disputed the accuracy of these allegations in their appellate filings. (*See* Doc. Nos. 17, 24, 25.)

[3] Westower was formerly known as Spectrasite Network Inc. and Spectrasite Construction, Inc.  (Doc. No. 6-7 at 5.)

On October 27, 2003, A&A filed a voluntary petition seeking protection from creditors under Chapter 7 of the Bankruptcy code. (Doc. 4.) In conjunction, Atkins submitted a financial schedule listing a contingent and unliquidated claim against Westower as A&A's only cause of action. (*Id.*) Atkins also listed Staggs and MSCD in the schedule as creditors holding unsecured, disputed claims against A&A. (*Id.*) During a deposition, Atkins stated that he listed Staggs and MSCD on the schedule because they guaranteed a loan for $175,000 from Mercantile Bank to A&A. (Doc. No. 4-11 at 12-13.) Several months later, the trustee filed a Report of No Distribution, stating that A&A had no assets to distribute to its creditors. (Doc. 4-2.)

On January 13, 2006, Westower commenced a lawsuit in the Ninth Judicial Circuit for Orange County against Troy Atkins, Castlebuilders (which had since become defunct), and Michael Staggs. The action arose out of the unearned payments from Westower to A&A, and the complaint alleged that Atkins, Castlebuilders, and Staggs were liable for fraud and conversion by orchestrating a scheme to submit false invoices to Westower. (Doc. No. 5-12 at 46-61.) Westower retained GrayRobinson, P.A., as counsel for the action. (*Id.*)

Shortly after the complaint was filed, Atkins amended an earlier filing in A&A's bankruptcy case to disclose that A&A had "alleged[ly]" made transfers without consideration to MSCD and Castlebuilders. (Doc. 4-4.) After that, the trustee withdrew his previously filed Report of No Distribution. (Doc. 3-4 at 4.)

On May 30, 2007, the trustee filed an application to employ GrayRobinson, P.A., as special counsel for the trustee to prosecute claims associated with A&A's transfers to MSCD and Castlebuilders. (Doc. Nos. 4-14, 4-16.) The Bankruptcy code permits trustees to appoint "professionals" such as attorneys to assist in administering the debtor's estate. 11 U.S.C. § 327

(2006). When the debtor makes a fraudulent transfer to third parties, it is common for the trustee to appoint special counsel to pursue claims for the benefit of creditors in an adversary proceeding against the recipients of the transfers. *See*, *e.g.*, *In re Gurley*, 379 B.R. 194, 198 (Bnkr. M.D. Fla. 2007); *In re Aqua Clear Techs., Inc.*, 361 B.R. 567, 573 n.4 (Bnkr. S.D. Fla. 2007).

On June 29, 2007, Staggs filed an objection to the appointment of GrayRobinson, arguing that a conflict of interest likely existed due to the firm's representation of Westower in the state court action against Staggs, Atkins, and Castlebuilders. (Doc. No. 4-21.) The same day, the trustee filed an adversary complaint against Staggs, MSCD, Atkins, Castlebuilders, Stagg Brother's Racing, and Secure Communications. (Doc. No. 6-7.) The complaint alleged that the adversary defendants were the recipients of fraudulent transfers from A&A. (*Id.*)

On August 9, 2007, the Bankruptcy Court entered an order approving the application to employ GrayRobinson, and on September 25, 2007, the Court denied Staggs' Motion for Reconsideration of the order. (Doc. Nos. 5-16, 3-3.) This appeal followed.

**Standard of Review**

To pursue a bankruptcy appeal, a party must demonstrate that it has standing under the Federal Bankruptcy Code.[4] A party has standing under the Federal Bankruptcy Code to appeal an order of the bankruptcy court if it is a "person aggrieved" by the order.[5] *In re Vick*, 233 Fed. Appx. 897, 899 (11th Cir. 2007) (citing *In re Westwood Community Two Ass'n Inc.*, 293 F.3d 1332, 1335

---

[4] The party must also demonstrate standing under the federal constitution. However, the constitutional standard is generally viewed as being less restrictive than the standard for demonstrating standing under the Bankruptcy code. *In re Westwood Community Two Ass'n Inc.*, 293 F.3d 1332, 1335 (11th Cir. 2002)

[5] The "person aggrieved" standard appeared as a requirement for appeal under the previous Bankruptcy Code but is absent from the current code. Nevertheless, courts continue to apply the standard as a "prudential standing requirement." *In re Westwood*, 293 F.3d at 1335.

(11th Cir. 2002)). "Aggrieved parties in the bankruptcy context are those parties having a direct and substantial interest in the question being appealed." *Id.* (citing *In re Odom*, 702 F.2d 962, 963 (11th Cir. 1983) (internal quotations omitted). The standard is more restrictive than traditional Article III standing, and it allows appeal only by parties who are "directly and adversely affected pecuniarily by the order." *Id.* (citing *In re Westwood*, 293 F.3d at 1335). Put differently, the order being appealed must diminish the party's property, increase the party's burden, or impair the party's rights. *Id.*

Because multiple parties with an array of interests participate in the typical bankruptcy case, a party's mere appearance in the underlying proceedings is insufficient to confer standing to appeal the bankruptcy court's orders. *In re Westwood*, 293 F.3d at 1337; *Comjean v. Cruickshank*, 191 B.R. 504, 507 (Bnkr. D. Mass. 1995) ("The aggrieved person rule insures that bankruptcy proceedings are not unreasonably delayed by protracted litigation of . . . nominal parties." (internal quotations and citations omitted)). Analyzing the problem of appeal by nominal parties, the Seventh Circuit has declared that:

> [T]o establish standing as a 'person aggrieved' . . . it is necessary for the plaintiff to show that the challenged [order] caused him injury in fact as well as that the interest which he seeks to protect through his petition for review is an interest which the Bankruptcy Act seeks to protect or regulate. Clearly, the primary objective of the Bankruptcy Act is to minimize the injury to creditors arising from the fact of bankruptcy.

*In re The Harwald Co.*, 497 F.2d 443, 444 (7th Cir. 1974); *In re Multiple Servs. Indus., Inc.*, 46 B.R. 235, 236-37 (E.D. Wisc. 1985). The question whether a party is a "person aggrieved" for purposes of pursuing a bankruptcy appeal is usually a question of fact for the district court. *Lyndon Property Ins. Co. v. Katz*, 196 Fed. Appx. 383, 387 (6th Cir. 2006) (citing *Marlow v. Rollins Cotton Co. (In re Jullien Co.)*, 146 F.3d 420, 423 (6th Cir. 1998)).

**Analysis**

Appellants offer three arguments in support of their standing to pursue this appeal: (1) that the issue of standing was not raised during the underlying proceedings and therefore cannot be challenged on appeal; (2) that they have standing because they are creditors of A&A; and (3) that they have standing by virtue of being defendants in the adversary proceeding.

### A.     Raising the Issue of Standing for the First Time on Appeal

As a general matter, a party may not raise an issue for the first time on appeal. *See*, *e.g.*, *In re Rauh*, 119 F.3d 46, 51 n.7 (1st Cir. 1997). However, "standing represents a jurisdictional requirement which remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). Moreover, in this case, the issue presented is whether Appellants have standing *to appeal* from a decision of the Bankruptcy Court. Logically, a party's standing to appeal cannot be challenged before that party appeals.[6] Accordingly, it is appropriate for Thomas to raise the issue of standing for the first time on appeal.

### B.     Appellants' Purported Status as Creditors

Appellants next argue that they have standing to appeal because they were listed as creditors of A&A. Thomas argues that A&A's decision to list Appellants as creditors does not bear on their standing to appeal because Appellants' guarantees on the loan to A&A will mature into claims against A&A only when Appellants are forced to pay the guaranteed loan. (Doc. No. 18 at 8; Doc. No. 23 at 10.) As a result, Appellants cannot demonstrate any injury linked with their purported status as creditors. (Doc. No. 23 at 10.) Moreover, Thomas argues that Appellants' other claimed

---

[6]     Moreover, the issue of whether a party has standing to move for reconsideration of an order during bankruptcy proceedings is subject to a different standard, and it is not determinative of the party's standing to appeal the order. *In re Westwood*, 293 F.3d at 1337.

injuries are unrelated to their status as creditors and therefore insufficient to confer standing on that basis. (*Id.* at 10-11.) In response, Appellants contend that the disputed nature of a creditor's claim does not deprive the creditor of standing to appeal. (Doc. No. 25 at 9.)

Thomas is correct in both respects. Under the Bankruptcy Code, the claims of sureties and guarantors are "disallowed" if they are "contingent" at the time the claim is asserted. 11 U.S.C. § 502(e)(1)(B). In other words, a surety or guarantor cannot assert a claim as a creditor until it has "paid the obligation upon which it is seeking contribution." *Greatamerican Federal Sav. & Loan Ass'n v. Adcock*, No. 89 C 3794, 1990 WL 51219, *3 (N.D. Ill. Apr. 17, 1990). Appellants have not offered evidence that they have been required to pay the guaranteed loan.[7] Thus, Appellants have not demonstrated that they possess a viable claim against the debtor, and there is no evidence that their purported status as creditors will cause them to be "directly and adversely affected pecuniarily by the order." *See also Multiple Servs. Indus., Inc.*, 46 B.R. at 236-37 (finding that a guarantor lacked standing to appeal a bankruptcy order because the guarantor did not possess an interest which the Bankruptcy Act sought to protect or regulate).

Furthermore, the Appellants' other claimed injuries arise from their status as adversary defendants, not creditors. Appellants claim that the appointment of GrayRobinson will force the adversary defendants to defend two proceedings at once: (1) Westower's state court action and (2) the adversary proceedings in bankruptcy court. (Doc. No. 17 at 31.) Presumably, this is because Westower has agreed to pay GrayRobinson's legal fees to pursue the adversary proceedings, and Appellants believe that the trustee would otherwise be unwilling to pursue the adversary proceedings

---

[7] In fact, Appellants were not listed as co-debtors on A&A's financial schedule. (Doc. No. 4 at 21.) Troy Atkins was the only listed co-debtor.

without this agreement.  (*Id.* at 27, 31; Doc. No. 4-19 at 4.)  As a result, Appellants argue, any recovery for the creditors in the adversary proceedings will be diminished by the extra expenses the adversary defendants spend in their defense.  (Doc. No. 17 at 31.)

There are a number of problems inherent in this very speculative argument.[8]  Most prominently, Appellants are the wrong parties to raise it.  Although Appellants attempt to claim the injury in their guise as creditors, they have failed to demonstrate that they have a viable claim against A&A and therefore have only demonstrated that they will be injured in their role as adversary defendants.

Likewise, Appellants misplace their heavy reliance on their disputed status as creditors.  Mere appearance in the underlying proceedings is insufficient to confer standing to appeal the Bankruptcy Court's orders.  *In re Westwood*, 293 F.3d at 1337.  To establish standing, the appellant must demonstrate that it has a "direct and substantial interest in the question being appealed" and will be "directly and adversely affected pecuniarily by the order." *In re Vick*, 233 Fed. Appx. at 899.

Appellants appear to argue that an injury must be inferred from the fact that A&A listed them as creditors on its financial schedule.  (*See* Doc. No. 24 at 3.)  In support they cite an unpublished Ninth Circuit decision which found that the debtor was judicially estopped from challenging the standing of a creditor.  (*Id.* at 3-4.)  The court further stated in dicta that, "[m]oreover, Erhard

---

[8] The argument is illogical.  For Appellants' claimed injury to be linked to the Bankruptcy Court's order, the appointment of GrayRobinson would have to be a "but for" cause of the trustee's decision to pursue adversary proceedings. *See*, *e.g.*, *Gulf States Reorganization Group, Inc. v. Nucor Corp.*, 466 F.3d 961, 965 (11th Cir. 2006) (discussing the standard for demonstrating causation in the standing analysis).  If Appellants are contending that the proceedings would not otherwise be brought, under Appellants' logic the creditors actually *benefit* from the appointment of GrayRobinson.  This is because the creditors will receive a diminished recovery if GrayRobinson is appointed, versus no recovery if GrayRobinson is not appointed.

satisfies the broad definition of creditor under the Bankruptcy Code: he has a claim against Roberts for $20,000, even if that claim is disputed." *In re Roberts*, 241 Fed. Appx. 420, 422 (9th Cir. 2007). The court's decision contained no further discussion of standing.

Labels are not dispositive for the purposes of standing, and the appellant must establish that it is an "aggrieved person" regardless of what status the debtor or trustee assigned to it. The Ninth Circuit's decision in *In re Roberts* did not find otherwise, and the decision certainly did not overrule the Eleventh Circuit's well-established rules requiring a bankruptcy appellant to demonstrate actual harm from the order being appealed. In this case, Appellants have not demonstrated that they will suffer any harm as "creditors" of A&A, and they therefore do not have standing to appeal on that basis.

    C.    **Appellants' Status as Adversary Defendants**

Appellants next argue that they have standing to appeal the Bankruptcy Court's order because they are adversary defendants. In support, they cite *Comjean v. Cruickshank*, 191 B.R. 504, 506 (D. Mass. 1995), which found that an adversary defendant had standing to appeal a judgment entered against it.

Appellants again rely on a label without addressing the actual requirements of standing. In *Comjean*, the appellant suffered pecuniary harm in the form of an "adverse judgment." *Comjean*, 191 B.R. at 507.[9] The situation is fundamentally different in this case. Appellants challenge the appointment of special counsel to prosecute the adversary proceedings against them on the basis that

---

[9] Regarding the ability of an adversary defendant to appeal, the *Comjean* court explained: "[P]ermitting Comjean to appeal does not undermine the policies giving rise to the aggrieved person rule. Because the number of named parties in an adversary proceeding is limited, allowing those named parties to bring appeals from *adverse judgments* does not open the floodgates to bankruptcy appeals." *Comjean*, 191 B.R. at 507 (emphasis added).

a conflict of interest exists. Unlike *Comjean*, Appellants have not demonstrated a pecuniary harm resulting from the Bankruptcy Court's decision. To the contrary, Appellants have identified a potential benefit. (*See* Doc. No. 17 at 32.) Adversary defendants such as Appellants would presumably benefit from any conflict of interest which may temper the zeal of opposing counsel.[10]

Moreover, Appellants fail to demonstrate that they possess an "interest which the Bankruptcy Act seeks to protect or regulate." *In re The Harwald Co.*, 497 F.2d at 444. The provision of the Bankruptcy Code governing conflicts of interest permits creditors and the trustee to object to the appointment of professionals when an "actual conflict of interest" exists. 11 U.S.C. § 327(c). The section does not grant the right to adversary defendants to object to the appointment of opposing special counsel.

Accordingly, Appellants lack standing to appeal the Bankruptcy Court's appointment of special counsel.

## Conclusion

Based on the foregoing, the appeal is **DISMISSED** for lack of jurisdiction. All pending motions are **DENIED** as moot. The Clerk shall close the case file.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 28, 2007.

---

[10] In some situations, the Government may object to defense counsel's conflict of interest during criminal proceedings. *In re Gopman*, 531 F.2d 262, 265 (5th Cir. 1976); *United States v. Culp*, 934 F. Supp. 394, 398 (M.D. Fla. 1996). In addition, attorneys are always permitted to report suspected ethical violations by opposing counsel. However, neither rule is instructive on whether a party is an "aggrieved person" for purposes of appealing a bankruptcy order.

_____
PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
United States Bankruptcy Court for the Middle District of Florida

-11-